IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAVON JETER, SR., | ) | CASE NO. 4:13CV896 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| LT. SAMPLE, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

*Pro se* Plaintiff Ravon Jeter, Sr., ("Jeter") filed a Complaint alleging that Defendant Lieutenant Sample ("Sample"), an officer employed at the Ohio State Penitentiary ("OSP"), used excessive force against him.[1]  Doc. 3, p. 5.  Specifically, Jeter alleged that, while he was experiencing a medical emergency and was passed out on his cell floor, Sample and other members of the team who responded to his medical emergency "bust my mouth open and used excessive force with malicious and sadistic intent to inflict pain."  Doc. 3, p. 5.

Jeter and Sample have both filed motions for summary judgment.[2]  Docs. 28; 29.  The Affidavits and medical records submitted by Sample establish that there was no injury to Jeter's

---

[1] The Complaint was initially filed in the U.S. District Court for the Southern District of Ohio. In his Complaint, Jeter also alleged that other individuals, various correctional personnel at OSP and the Southern Ohio Correctional Facility were deliberately indifferent to his serious medical needs.  Doc. 3. During the Southern District Court's initial screening of Jeter's Complaint, the court ordered that Jeter's claim against Defendant Sample be severed and transferred to this Court for all further proceedings.  *See Jeter v. Ahmed, et al.*, 1:13-cv-00244, Doc. 4. ("[P]laintiff's claim against 'Lt. Sample' for the excessive use of force in a separate incident that allegedly occurred on November 28, 2012 at OSP does not satisfy the criteria for joinder under Fed. R. Civ. P. 20(a)…it is appropriate to order the severance of the claim against defendant Sample for the alleged excessive use of force at OSP."). Accordingly, the only operative portion of Jeter's Complaint before the Court is his excessive force claim against Defendant Sample.

[2] Jeter's filing is entitled "Motion for Summary Judgment," is not dated, and was received by the Court six days after the dispositive motion cutoff date.  *See* Doc. 24.  Sample argues that Jeter's motion is untimely.  Doc. 31, p. 1.  Sample construed Jeter's motion as an opposition brief and, in turn, filed a brief in reply.  Doc. 31, p. 1.  Jeter did not file a response to Sample's motion or a reply brief in support of his own motion.  In order to address the matter

1

mouth during the incident in which Sample responded to Jeter's medical emergency; rather, medical personnel first noticed that Jeter's lip was swollen and bleeding after a second medical incident later that day that related to Jeter breaking a sprinkler head in his cell and ingesting pieces of it.  Jeter has submitted no evidence that contradicts the evidence submitted by Sample, nor does Jeter deny that he broke the sprinkler head and ingested pieces of it.  For the reasons explained below, there is no genuine issue of material fact and Sample's Motion for Summary Judgment should be **GRANTED**; Jeter's Motion for Summary Judgment should be **DENIED**.

## I.  Background

At the time giving rise to this claim, Jeter was incarcerated at OSP.  Doc. 26, p. 1, ¶1.  Jeter alleges that, on November 28, 2012, at approximately 5:30 p.m., he was in his cell and had shortness of breath.  Doc. 3, p. 5; 29, p. 3.  He requested an inhaler from corrections officers but did not receive one.  Docs. 3, p. 5; 29, p. 3.  He then passed out.  Docs. 3, p. 5; 29, p. 3.  When he woke up he was lying in the medical unit.  Doc. 29, p. 3.  He asserts that when he woke up he had a bad headache.  Doc. 29, p. 3.  He also states that he felt his lip and that it was cut, bleeding, and "slightly swollen."  Doc. 29, p. 3.

The Affidavit of Corrections Officer Robert Ingram states that, at approximately 5:30 p.m., Jeter complained of chest pains to Ingram. Docs. 28, p. 2; 28-1, p. 1, ¶3.  Ingram notified a nurse and went to check on Jeter.  Docs. 28, pp. 2-3; 28-1, pp. 1-2, ¶3.  Ingram and Corrections Officer Damon Bryant found Jeter lying on the floor of his cell, unresponsive, with a towel over his head.  Docs. 28, p. 3; 28-1, pp. 1-2, ¶3; 28-2, p. 1, ¶3.  Jeter did not respond to verbal commands.  Docs. 28, p. 3; 28-1, pp. 1-2, ¶3; 28-2, p. 1, ¶3.  Bryant signaled a medical emergency and available staff responded to Jeter's cell.  Docs. 28, p. 3; 28-2, p. 1, ¶3.

---

on the merits, the Court treats Jeter's motion as if it had been filed timely.  The Court also considers the arguments and evidence presented therein as a response to Sample's motion for summary judgment.

Sample states in his Affidavit that he supervised the responding staff. Docs. 28, p. 3; 28-4, p. 1, ¶4. The staff entered Jeter's cell in order to secure Jeter so that he could be examined by medical personnel. Docs. 28, p. 3; 28-1, p. 2, ¶4. Bryant entered the cell first using a shield as a barrier. Docs. 28, p. 3; 28-2, p. 1, ¶4. The staff established that Jeter did not pose a threat and then secured him using handcuffs and leg irons. Docs. 28, p. 3; 28-4, p. 1, ¶4.

Once Jeter was secured, Nurse Casandra Lucas entered the cell and checked Jeter's pulse and breathing. Docs. 28, p. 3; 28-1, p. 2, ¶6; 28-5, p. 1, ¶4. Jeter was unresponsive. Docs. 28, p. 3; 28-5, p. 1, ¶4. Lucas roused him with smelling salts. Docs. 28, p. 3; 28-5, p. 1, ¶4. Jeter was then carried to a gurney and taken to the medical unit. Docs. 28, p. 3; 28-4, p. 1, ¶5; 28-5, p. 1, ¶4.

Lucas examined Jeter again in the medical unit. Docs. 28, p. 3; 28-5, p. 1, ¶5. She noted that his eyes were red and that his mouth was dry. Docs. 28, p. 3; 28-5, p. 1, ¶5. She observed no physical injuries. Docs. 28, p. 3; 28-5, p. 1, ¶5. Jeter told her that he passed out, fell, and hit his head. Docs. 28, p. 4; 28-5, p. 2, ¶7. He complained that his head hurt. Docs. 28, p. 4; 28-5, p. 2, ¶8. Lucas received a telephone order from Dr. Kline advising she give Jeter Tylenol every six hours for his headache and that Jeter could return to his cell if he was stable. Docs. 28, p. 3; 28-5, p. 2, ¶6. Jeter returned to his cell at approximately 8:25 p.m. Docs. 28, p. 4; 28-5, p. 2, ¶8.

At approximately 9:05 p.m., Jeter broke the sprinkler head in his cell. Docs. 28, p. 4; 28-5, p. 2, ¶7; 28-3, p. 1, ¶6. He ingested pieces of the broken sprinkler head. Docs. 28, p. 4; 28-5, p. 2, ¶9. He was taken back to medical at 9:15 p.m. Docs. 28, p. 4; 28-5, p. 2, ¶9. Nurse Lucas observed that his bottom lip at that time was "busted," swollen, and had "scant bleeding." Docs. 28, p. 4; 28-5, p. 2, ¶10; 28-7, p. 2. Her Affidavit notes that Jeter's lip "had not been busted and swollen when I examined him earlier that evening." She cleaned Jeter's lip. Docs. 28, p. 4; 28-

3

5, p. 2, ¶10.  An x-ray of Jeter's abdomen was ordered for the next morning; metallic foreign bodies were found in his abdomen.  Docs. 28, p. 4; 28-8, p. 2.

## II.  Standard of Review

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted).

Once the moving party has met its burden, the non-moving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Id. at 256; Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson, 477 U.S. at 247–48 (emphasis in original).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.

The legal standard applied to cross-motions for summary judgment does not differ from the standard applied when one party to the litigation files a summary judgment motion. *Ferro Corp. v. Cookson Group, PLC*, 585 F.3d 946, 949 (6th Cir. 2009).  Each cross-motion must be evaluated on its own merits, with the court viewing all facts and reasonable inferences in the light most favorable to the nonmoving party.  *See Appoloni v. U.S.*, 450 F.3d 185, 189 (6th Cir. 2006).

### III.  Analysis

In his Complaint, Jeter alleges that Sample and the response team busted his mouth open, using excessive force with malicious and sadistic intent to inflict pain.  Doc. 3, p. 5.  In his brief in support of his motion, Jeter merely asserts that, upon waking up in the medical unit after passing out, he observed that his lip was slightly swollen, cut, and bleeding.  Doc. 29, p. 3.  He states, "this injury only could've happened from the staff when they rammed the riot shield into my face during the medical emergency response."  Doc. 29, p. 3.  Sample contends that Jeter has failed to submit any verified evidence sufficient to create a genuine issue of material fact and that Jeter cannot demonstrate that he suffered a physical injury or that Sample used excessive force against him.  Docs. 28, pp. 6-10; 31, p. 3.  Sample also asserts that he is entitled to qualified immunity.  Doc. 28, p. 10-12.

### A. Jeter has not rebutted the evidence that he suffered no injury at Sample's hands and that excessive force was not used against him

Sample presented an Affidavit from Nurse Lucas who stated that Jeter did not have an injury to his lip when he arrived at the medical unit the first time on November 28, 2012, after he passed out in his cell.  Doc. 28-5, p. 1, ¶5; p. 2, ¶10.  Nurse Lucas asserted that Jeter did have a bottom lip that was "busted and swollen with scant bleeding" when he presented to the medical

5

unit for the second time on that date, after ingesting the broken sprinkler head.[3]  Doc. 28-5, p. 2, ¶10. Sample presented medical records showing that Jeter's "busted" lip with swelling and scant bleeding was documented when he arrived in the medical unit after ingesting pieces of the broken sprinkler head.  Docs. 28-7, pp. 1-2 (medical exam reports); 28-2 (interdisciplinary progress notes).  Sample also presented evidence in the form of Affidavits from the staff members who responded to the emergency and entered Jeter's cell; the staff members stated that no excessive force was used.  Doc. 28-2, p. 1, ¶4 (Corrections Officer Bryant stating that he did not bust Jeter's mouth with the shield); 28-3, p.1, ¶5 (Corrections Officer Thomas Mitchell stating that no force was used other than the amount necessary to handcuff Jeter); 28-4, p. 2, ¶6 (Sample stating that no force was used other than the amount necessary to secure Jeter's hands and legs).

Jeter has not submitted evidence to contradict Sample's evidence.  The only Affidavit submitted by Jeter is signed by Eugene Cayson, an inmate at OSP.[4]  Doc. 29-1.  Cayson did not witness any of the events that occurred inside Jeter's cell and his affidavit confirms Sample's version of events as to what occurred outside Jeter's cell.  Doc. 29-1 (describing how prison staff called Jeter's name but that Jeter was unresponsive; prison staff and medical personnel entered Jeter's cell and remained inside for three to four minutes; Jeter was carried out, placed on a gurney and strapped down, still unconscious and unresponsive). Cayson does not say he observed that Sample inflicted an injury on Jeter.  Cayson's Affidavit does not create an issue of fact with respect to what occurred inside Jeter's cell.

---

[3] Nurse Lucas called the metal item a "showerhead" while Sample referred to the object as a "sprinkler head." Docs. 28-2, p. 2, ¶9; 28-4, p. 2, ¶7.  The distinction is not material and the Court refers to the item as a sprinkler head.

[4] Jeter submitted two Affidavits with his Complaint.  Doc. 3-2.  These Affidavits do not involve Sample; they are relevant to Jeter's claims that remained in his case in the Southern District of Ohio.

Jeter's Complaint is verified and, therefore, also has evidentiary value. Doc. 3, pp. 6-7. However, in verifying his Complaint, Jeter states, "I have read the foregoing Complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true." Doc. 3, p. 7. In his Complaint, Jeter does not distinguish between allegations that are based on information and belief and allegations that are true. Thus, the Court cannot discern which allegations Jeter verified as true and which allegations Jeter advanced only based on information and belief. Notably, Jeter admits that he was unconscious in his cell during the time he alleges that the use of force occurred and his injury was inflicted. He cannot therefore verify that Sample used excessive force maliciously with intent to inflict pain or that he suffered an injury to his lip from Sample's actions.[5]

Because Sample has submitted evidence supporting his version of events and Jeter has offered no evidence in support of his, there is no genuine issue of material fact and summary judgment should be granted in favor of Sample. *See Celotex*, 477 U.S. at 323 (summary judgment is proper against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case,...since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Anderson*, 477 U.S. at 257 (a party opposing a summary judgment motion "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").

---

[5] Jeter stated that, when he passed out, he "fell and hit his head." Docs. 29, p. 3; 28-5, p. 2, ¶7. It is not, therefore, a foregone conclusion based on Jeter's version that his lip injury could only have been caused by prison staff. Jeter also argues that the broken sprinkler head was small and "can be swallowed easily without causing further injury." Doc. 29, p. 2. Whether a broken sprinkler head can be swallowed easily is not evidence showing that Jeter was injured in his cell by prison staff. Moreover, Jeter also alleges in his Complaint that the pieces of the broken sprinkler head he ingested caused further injury, abdominal pain. Doc. 3, p. 6.

Moreover, as discussed below, Sample is also entitled to summary judgment because Jeter cannot show that his injury is more than *de minimis*; cannot show that Sample's alleged use of force was more than *de minimis*; and because Sample is entitled to qualified immunity.

### B. Under the PLRA, because Jeter's physical injury was *de minimis*, he may not recover for mental or emotional injury

In his Complaint, Jeter seeks monetary damages "for pain and suffering, mental anguish..., excessive force, busted mouth and humiliation." Doc. 3, p. 9. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), provides, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id.* "[E]ven though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward." *Jarriett v. Wilson*, 162 Fed. App'x 394, 400 (July 7, 6th Cir. 2005) (leg swelling, pain, and cramps that inmate did not mention to medical staff were no more than *de minimis* injury); *Corsetti v. Tessmer*, 41 Fed. App'x 753, 755 (June 25, 6th Cir. 2002) (two small bruises on inmate's shoulder and minor cuts that did not require medical attention were "clearly *de minimis*.").

Here, as noted, Jeter has not presented evidence showing that he suffered any injury caused by the prison staff. Furthermore, although Jeter alleged in his Complaint that Sample "busted his mouth," he now admits that his injury occurred to his lip, which was "cut [and] bleeding also slightly swollen." Doc. 29, p. 3. Jeter does not allege, and Sample's evidence does not show, that Jeter ever complained to medical staff that his lip was injured, that his lip caused him pain, or that his lip required medical attention. A "slightly swollen" lip that has a cut with "scant bleeding," no evidence of pain, and no evidence that medical attention is required is no

8


more than a *de minimis* injury. See *Jarriett*, 162 Fed. App'x at 401; *Corsetti*, 41 Fed. App'x at 755. The facts in this case are distinguishable from the facts in *Hudson v. McMillian*, 503 U.S. 1, 10 (1992), where the Court found that "bruises, swelling, loosened teeth, and a cracked dental plate, are [more than] *de minimis* for Eighth Amendment purposes." Accordingly, even if Jeter could show that he suffered a physical injury caused by Sample's actions, his physical injury was no more than *de minimis* and he is not entitled to recover for his alleged mental or emotional injury. See 42 U.S.C. § 1997e(e); *Jarriett*, 162 Fed. App'x at 401 (affirming district court's grant of summary judgment in favor of defendants because plaintiff could not show a physical injury per § 1997e(e)).

### C. Because Sample has established that he did not use excessive force and Jeter has not countered that evidence, Jeter may not recover for his physical injury

Jeter's Complaint alleges that Sample used excessive force against him with malicious and sadistic intent to inflict pain when the prison staff responded to his medical emergency. Jeter, a prison inmate, has a constitutional right to be free from the use of excessive force by prison officials under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 318-319 (1986). The "core judicial inquiry" when a prison official is accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7; citing *Whitley*, 475 U.S. at 320–21). A court considers "the extent of injury suffered by an inmate,...the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

9

"[E]very malevolent touch by a prison guard" does not give rise to a federal cause of action.  *Id*. at 9.  The Eighth Amendment does not apply to *de minimis* uses of physical force that are not "repugnant to the conscience of mankind."  *Id*. at 9-10 (citations omitted).  "The maintenance of prison security and discipline may often require that prisoners be subjected to physical contact which at common law would be actionable as an assault or battery and which, in retrospect, may have been excessive.  But, the good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment."  *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986) (citing *Whitley*, 475 U.S. 312; *Rhodes v. Chapman*, 452 U.S. 337, 346, (1981)); *Kinley v. Davis*, 772 F.2d 907, at *2 (6th Cir. 1985) (table decision) ("prison officials are given wide ranging deference in the execution of policies needed to preserve internal order and maintain security," citing *Bell v. Wolfish*, 411 U.S. 520, 547 (1979)).

The Affidavits of the responding officers, including Sample, state that no force was used other than the amount necessary to secure Jeter's hands and legs.  *See* Doc. 28-4, p. 2, ¶6.  Again, Jeter provides no evidence showing that Sample used excessive force against him and he admits that he does not know "how they busted my lip when I was passed out unconscious."  Doc. 29, p. 3.  Furthermore, even if Jeter's allegation—that his injury only could have happened when prison staff "rammed the riot shield into my face during the medical emergency response"—could be supported by evidence, Jeter cannot show that Sample used excessive force.

Applying the factors articulated in *Hudson*, the Court notes that, as described, *supra*, Jeter's injury was *de minimis*.  Additionally, prison staff entered Jeter's cell because there was a medical emergency—Jeter was lying unresponsive on the floor.  Doc. 28-2, p. 1, ¶3.  In his Affidavit, Corrections Officer Bryant stated that he used a shield "as a barrier against [Plaintiff]" and explained that "[a] barrier is necessary in case an inmate is faking unresponsiveness and has a weapon or tries to attack the custody staff."  Doc. 28-2, p. 2, ¶4.  Bryant's explanation serves to

show that the prison staff reasonably perceived that, although Jeter was lying on the floor apparently unresponsive, he still potentially posed a threat to officer safety and prison control, both valid penological concerns. *See Hudson*, 503 U.S. at 7; *Parrish*, 800 F.2d at 604. Bryant also stated that, once the responding staff established that Jeter did not pose a threat, the shield was no longer used and the staff handcuffed Jeter and put leg irons on him so that medical staff could examine him. Doc. 28-2, p. 1, ¶4. Thus, the prison staff's actions were the result of a reasonably perceived threat and amounted to no more force than necessary. It cannot be said that the force used was "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 10.

Because Jeter cannot demonstrate a genuine issue of material fact as to whether Sample used excessive force maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain discipline while responding to a medical emergency, *see id.* at 7, Sample is entitled to summary judgment.

### D. Sample is entitled to qualified immunity

Sample asserts that he is entitled to qualified immunity. Doc. 28, p. 10. The doctrine of qualified immunity protects governmental officials performing discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether a government official is entitled to qualified immunity, a court must decide whether the official violated a constitutional right and whether the right was clearly established. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)); *see also Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011) (a court may use discretion in deciding which question to address first). Once a defendant raises the qualified immunity defense, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

11

Here, as discussed, Sample has shown that he did not violate Jeter's constitutional rights and Jeter has provided no evidence to the contrary. Accordingly, Sample is entitled to summary judgment based on qualified immunity. See *Saucier*, 533 U.S. at 201.

## IV. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Defendant Sample's Motion for Summary Judgment be **GRANTED** and that Plaintiff Jeter's Motion for Summary Judgment be **DENIED.**

Dated: February 9, 2015

Kathleen B. Burke
United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).